

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| WILLIAM PAUL WHITING,<br><br>Plaintiff,<br><br>vs.<br><br>MELISSA EAGLE BEAR, individually and in her official capacity, AND HATTIE DUNHAM, individually and in her official capacity,<br><br>Defendants. | 3:15-CV-03019-RAL<br><br><br>OPINION AND ORDER GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS AND DISMISSING COMPLAINT |

On October 8, 2015, Plaintiff William Paul Whiting ("Whiting") filed a pro se claim against Melissa Eagle Bear ("Eagle Bear"), Facility Supervisor and Warden at the Rosebud Sioux Tribe Adult Correctional Facility ("RSTACF"), and Hattie Dunham ("Dunham"), Program Specialist at the RSTACF, in their individual and official capacities under 28 U.S.C. § 1331 and Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). Doc. 1. Whiting alleges that Eagle Bear and Dunham (collectively "Defendants") violated his constitutional rights and seeks monetary damages. Doc. 1. Whiting also filed a motion for leave to proceed in forma pauperis. Doc. 2. For the reasons stated below, Whiting's motion for leave to proceed in forma pauperis is granted, and his Complaint is dismissed without prejudice under the doctrine of tribal sovereign immunity and for failure to state a claim, lack of subject matter jurisdiction, and failure to exhaust administrative remedies under 28 U.S.C. § 1915A.

1

I.  **FACTS**

Whiting's Compliant contains three counts. Counts I and III contain similar claims. Count I alleges that on or about May 19, 2015, Melissa High Bear violated Whiting's First Amendment rights to attend church services and practice his religious beliefs because the RSTACF has a policy that does not allow detained individuals with bonds over $5,000 to participate in any programs. Doc. 1 at 4. Count III alleges that on May 26, 2015, Eagle Bear violated Whiting's First Amendment rights in the same way. Doc. 1 at 6. Count II of the Complaint alleges that Whiting's Eight Amendment rights were violated when he was denied medical care while detained at the RSTACF. Doc. 1 at 5. In Count II, Whiting specifically claims that he was prescribed blood pressure medication on May 21, 2015, and was subsequently denied follow-up appointments on May 28 and June 4, 2015, to determine if that previously prescribed blood pressure medication was working properly. Doc. 1 at 5. Whiting asserts that he finally was able to obtain medical treatment on June 11, 2015, when a correctional officer, Officer Yellowboy, called the paramedics because Whiting's blood pressure had reached 164/105. Doc. 1 at 5. Whiting claims that administrative remedies for the allegations stated in Count II are not available, not requested, and not appealed, but that he did submit administrative requests for relief for the circumstances alleged in Counts I and III. Doc. 1 at 4–6. Whiting asserts that he did not submit an administrative request for Count II or appeal the administrative requests for Counts I and III because he was taken into federal custody approximately one week after he was released from tribal custody. Doc. 1 at 4–6.

## II. DISCUSSION

### A. In Forma Pauperis Status

Under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a)(1), a district court may authorize the commencement of a suit without prepayment of fees or security by a person who requests for leave to proceed in forma pauperis. In forma pauperis status does not require an applicant to be completely destitute, and the determination whether an applicant is sufficiently impoverished to qualify rests in the district court's discretion. Id.; Lee v. McDonald's Corp., 231 F.3d 456, 459 (8th Cir. 2000). Whiting did not pay the civil filing fee in this case, but has filed an application to proceed in forma pauperis, Doc. 2, and the record includes a Prisoner Trust Account Report, Doc. 3. Upon review, this Court finds that Whiting is indigent.[1] Therefore, Whiting's motion to proceed in forma pauperis is granted.

The PLRA, however, requires prisoners to make an initial partial filing payment where possible. Determination of the partial filing fee is calculated according to 28 U.S.C. § 1915(b)(1), which requires twenty percent of the greater of: (a) the average monthly deposits to the prisoner's account; or (b) the average monthly balance in the prisoner's account for the six-month period immediately preceding the filing of the complaint or notice of appeal. Whiting is obligated to pay the filing fee regardless of whether this Court allows or dismisses this action. In re Prison Litig. Reform Act, 105 F.3d 1131, 1134 (6th Cir. 1997). The obligation to pay a filing fee accrues the moment a plaintiff files his complaint with the court, and it cannot be avoided merely because the case is eventually dismissed. In re Tyler, 110 F.3d 528, 529–30 (8th

---

[1] Whiting declared that he has no money in any accounts and does not own property of value. Doc. 2 at 2. Although Whiting did not state that he has dependents in this case, he noted he has two dependents in the other case, No. 15-3017. At the time of the in forma pauperis filings, Whiting had been incarcerated for approximately two months and had a prison account balance of $1.56, an average monthly deposit of $22.00, and an average monthly balance of $20.00. Doc. 3.

3

Cir. 1997) (prisoner will be assessed full filing fee even if his case is dismissed because "the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal"). Whiting shall pay $4.40 for the initial partial filing fee in this case because he has average monthly deposits of $22.00.

### B. Screening of Whiting's Claims & Liberal Construction of Pro Se Complaint

Congress has directed this Court, under 28 U.S.C. § 1915A, to review and screen claims in a complaint being filed in forma pauperis to determine if they are (1) "frivolous, malicious, or fail[] to state a claim on which relief may be granted; or (2) seek[ ] monetary relief from a defendant who is immune from such relief."[2] 28 U.S.C. § 1915A(b); see also Stanko v. Patton, 228 F. App'x 623, 624 (8th Cir. 2007) ("A complaint is frivolous where it lacks an arguable basis either in law or in fact." (quoting Williams v. Hopkins, 130 F.3d 333, 335 (8th Cir. 1997))); Jefferies v. Marshall, No. CIV-12-3023, 2012 WL 3730605, at *2 (D.S.D. Aug. 28, 2012) ("This Court is required to dismiss claims that are frivolous, malicious, or fail to state a claim upon which relief may be granted."); In re Prison Litig. Reform Act, 105 F.3d at 1131 ("[B]efore service of process is made on the opposing parties, the district court must screen the case under the criteria of 28 U.S.C.A. § 1915(e)(2) and 28 U.S.C.A. § 1915A.").

A court must assume as true all facts well pleaded in the complaint. Cole v. Homier Distrib. Co., Inc., 599 F.3d 856, 861 (8th Cir. 2010). "Although pro se complaints are to be construed liberally, 'they still must allege sufficient facts to support the claims advanced.'"

---

[2] Section 1915A is restricted to prisoners who sue a "governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Section 1915(e)(2) overlaps the criteria of section 1915A but is different in three respects. Section 1915(e)(2) is not restricted to actions brought by prisoners, not limited to cases involving government defendants, and is applicable throughout the entire litigation process. 28 U.S.C. § 1915(e)(2). This Opinion and Order screens and dismisses Whiting's action under section 1915A, but even if a tribe and tribal employees would not prompt section 1915A's application, a similar disposition of dismissal for all claims would be warranted under section 1915(e)(2).

Stringer v. St. James R-1 Sch. Dist., 446 F.3d 799, 802 (8th Cir. 2006) (quoting Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004)). "[P]ro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." Id. (alterations in original) (quotation omitted). A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials and instead is based on vague or conclusory allegations or "unsupported generalizations," dismissal is appropriate. Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985) (internal quotation marks and quotation omitted). In Twombly, the Supreme Court of the United States made clear that a complaint's factual allegations, when taking all those allegations as true, must be "enough to raise a right to relief above the speculative level." 550 U.S. at 555.

There are three reasons why Whiting cannot proceed with this action. First, Defendants are immune from suit in federal court. Second, this Court lacks subject matter jurisdiction. And third, even if tribal immunity was waived and a federal statute gave this Court jurisdiction over the claims asserted, Whiting has failed to exhaust his administrative remedies on Count I and III. Each issue is separately addressed below.

### C. Tribal Sovereign Immunity

"As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Fort Yates Pub. Sch. Dist. No. 4 v. Murphy ex rel. C.M.B., 786 F.3d 662, 670 (8th Cir. 2015) (quoting Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. 751, 754 (1998)). Absent a clear and unequivocal waiver or congressional authorization, this Court does not have subject matter jurisdiction over an action against a

5

federally recognized tribe. Michigan v. Bay Mills Indian Cmty., 134 S. Ct. 2024, 2030–31 (2014). The Eighth Circuit has found that a tribe's sovereign immunity may extend to a tribal entity or agency. See J.L. Ward. Assocs., Inc. v. Great Plains Tribal Chairmen's Health Bd., 842 F. Supp. 2d 1163, 1171–72 (D.S.D. 2012) (collecting cases). In a suit for damages, tribal immunity also protects tribal employees acting in their official capacities and within the scope of their authority, as the relief would run directly against the tribe itself. Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1471 (8th Cir. 1999) (quoting N. States Power Co. v. Prairie Island Mdewakanton Sioux Indian Cmty., 991 F.2d 458, 460 (8th Cir. 1993)); see also Cohen's Handbook of Federal Indian Law § 7.05[1][a], at 638 (Nell Jessup Newton et al. eds., 2012). But cf. Bay Mills Indian Cmty., 134 S. Ct. at 2035 (noting that tribal immunity, however, does not bar suits "for injunctive relief against individuals, including tribal officers, responsible for unlawful conduct" (emphasis omitted)).

Here, the tribe's sovereign immunity protects both Defendants against these claims. Whiting alleges that Defendants were employed by the RSTACF in May and June of 2015. Doc. 1. The RSTACF is operated by the Rosebud Sioux Tribe ("the Tribe"), which is a federally recognized Indian tribe.[3] 25 U.S.C. §§ 479a, a–1; Indian Entities Recognized and Eligible to Receive Services for the United States Bureau of Indian Affairs, 80 Fed. Reg. 1942-02, 1942, 1945 (Jan. 14, 2015). Whiting does not contend that Congress has authorized this suit or that the Tribe has waived its sovereign immunity. Whiting does not allege that either Defendants were acting outside the scope of their official authority or that the RSTACF somehow is not an arm of the tribe. Thus, Whiting's claims for money damages against Defendants in their official

---

[3]The Tribe "negotiated with the Bureau of Indian Affairs . . . under one P.L. 93-638 contract" in 2008 to operate the RSTACF. Rosebud Sioux Tribe Corrections Services, Wanbli Wiconi Tipi, http://www.wanbliwiconitipi.com/web/index.php?siteid=1&pageid=17 (last visited Jan. 13, 2016).

6

capacities are barred by tribal sovereign immunity and must be dismissed. 28 U.S.C. § 1915A(b)(2).

Whiting's claims against Defendants in their individual capacities similarly cannot stand. To state a claim against Defendants in their individual capacities, Whiting must allege facts which suggest that both Defendants did not act on the Tribe's behalf or that both Defendants exceeded the authority granted to them by the Tribe. See Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 689–92 (1949); see also Burrell v. Armijo, 603 F.3d 825, 832–35 (10th Cir. 2010); Frazier v. Turning Stone Casino, 254 F. Supp. 2d 295, 309–10 (N.D.N.Y. 2003); Ross v. Flandreau Santee Sioux Tribe, 809 F. Supp. 738, 745 (D.S.D. 1992); Cohen § 7.05[1][a], at 638–39 ("Suits for damages against employees or officers in their individual capacities are barred by qualified immunity unless the alleged actions were not colorably within the authority delegated by the tribe."). However, no such allegations were made. Thus, Whiting's claims against Defendants in their individual capacities must be dismissed. 28 U.S.C. § 1915A(b)(1); see also Ferguson v. SMSC Gaming Enter., 475 F. Supp. 2d 929, 931 (D. Minn. 2007) ("A mere claim that [the individual defendant] made an error in exercising his authority is not sufficient."); Frazier, 254 F. Supp. 2d at 310 (holding individual defendants who were alleged to have violated state law and acted outside the scope of their authority were immune from suit because no allegations were made that the defendants acted "'without any colorable claim of authority'" (quoting Bassett v. Mashantucket Pequot Museum & Research Ctr., Inc., 221 F. Supp. 2d 271, 281 (D. Conn. 2002))).

### D. Subject Matter Jurisdiction

Even if the Tribe had waived its sovereign immunity, Whiting cannot establish that this Court has jurisdiction over the subject matter of this action. "Aside from the Indian Civil Rights

7

Act [("ICRA")], no federal statute specifically addresses the civil rights of persons under tribal jurisdiction." Cohen § 14.04[3], at 989. This is because many federal civil rights statutes limit their application, by their very terms, to states or state action,[4] or impose duties on the executive and federal government;[5] those limitations do not apply to Indian tribes. Id.; see also Santa Clara Pueblo v. Martinez, 436 U.S. 49, 56–57 (1978) (noting that absent a congressional delegation of power, tribes are not states of the Union as described in the federal Constitution). But even under ICRA, it is well understood that federal judicial review of tribal actions is authorized only through the habeas corpus provision of 25 U.S.C. § 1303, Santa Clara, 436 U.S. at 58, 69–70. Additionally, the Eighth Circuit has stated that ICRA only provides rights "against the tribe and governmental subdivisions thereof, and not against tribe members acting in their individual capacities." Means v. Wilson, 522 F.2d 833, 841 (8th Cir. 1975) (citing 25 U.S.C. § 1302); see also id. (concluding that "it is plain that only actions of the tribe and tribal bodies are constrained"). Defendants thus may not be sued for money damages in either their official or their individual capacities under ICRA.

---

[4]The Tribe is not a "person" amenable to suit under § 1983. Only "persons" who deprive citizens or other persons within the jurisdiction of the United States of rights conferred by federal laws under the color of state law may be liable under § 1983. 42 U.S.C. § 1983. The Supreme Court has stated that there is a "longstanding interpretive presumption" that the word "person" typically does not include a sovereign. Vt. Agency of Nat. Res. v. United States ex rel. Stevens, 529 U.S. 765, 780 (2000); see also Inyo Cty., Cal. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony, 538 U.S. 701, 708–09 (2003) (noting that in enacting § 1983 Congress did not intend to override sovereign immunity); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). In Inyo County, the Supreme Court held that an Indian tribe was not a "person" who could sue under § 1983. 538 U.S. at 708–12. As the Supreme Court recognized there, it would be illogical to hold that "person" used within the same statute means two different things whether the entity is bringing suit or being sued. Id. at 710.

[5]In Bivens, the Supreme Court of the United States created a damages action against federal officials as an implied remedy for constitutional violations. 403 U.S. at 392–99. In this case, neither Defendants are federal officials.

8

### E. Exhaustion of Administrative Remedies

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in [federal] court." Jones v. Bock, 549 U.S. 199, 211 (2007). The PLRA requires "immediate dismissal" of all unexhausted claims. Gibson v. Weber, 431 F.3d 339, 341 (8th Cir. 2005). Before filing this action, Whiting was required to fully and properly exhaust his administrative remedies as to each claim in the complaint. See Johnson v. Jones, 340 F.3d 624, 627–28 (8th Cir.2003) ("If exhaustion was not completed at the time of filing, dismissal is mandatory."). The prisoner must exhaust his administrative remedies even if the precise relief he seeks is not available through the prison grievance system." Booth v. Churner, 532 U.S. 731, 739–41 (2001). In order to properly exhaust administrative remedies, Whiting is required to "tak[e] advantage of each step the prison holds out for resolving the claim internally and by following the critical procedural rules of the prison's grievance process." Rothman v. Lombardi, No. 4:11CV639 CEJ, 2012 WL 639713 at *2 (E.D. Mo. Feb. 27, 2012) (internal quotation marks and quotation omitted).

Here, failure to exhaust is apparent from the face of the complaint. See Montrose v. Dooley, No. CIV 12-4170-RAL, 2012 WL 5509625, at *2-5 (D.S.D. Nov. 14, 2012) (citing circuit court cases that have "held that a court may dismiss a prisoner's claim *sue sponte* under its screening procedures when the failure to exhaust is obvious"); see e.g., Anderson v XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005) ("That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the

9

failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies."). Whiting admits that there are administrative remedies at the RSTACF and that he submitted administrative requests concerning Count I and III, but did not appeal those requests to the highest level. Doc. 1 at 4, 6. Whiting made no effort to seek administrative review for circumstances alleged in Count II, although he claims there to be no such procedure regarding his request for review of his blood pressure treatment. Whiting has not taken advantage of each step of the RSTACF's grievance process. Rothman, 2012 WL 639713 at *2. Therefore, dismissal is appropriate at least for Counts I and III because Whiting has not exhausted his administrative remedies. Count II fails for other reasons explained above.

### III. CONCLUSION

Therefore, it is hereby

ORDERED that Whiting's motion to proceed in forma pauperis, Doc. 2, is granted. It is further

ORDERED that the institution having custody of Whiting is hereby directed that whenever the amount in Whiting's trust account exceeds $10.00 monthly payments that equal twenty percent (20%) of the funds credited to the account the preceding month be forwarded to the United States District Court Clerk, 400 South Phillips Avenue, Sioux Falls, South Dakota, 57104, pursuant to 28 U.S.C. § 1915(b)(2), until Whiting has paid the $350.00 filing fee in full. It is finally

ORDERED that Whiting's Complaint, Doc. 1, is dismissed without prejudice under the doctrine of tribal sovereign immunity and for failure to state a claim, lack of subject matter jurisdiction, and failure to exhaust administrative remedies under 28 U.S.C. § 1915A.

DATED this 22nd day of January, 2016.

                        BY THE COURT:

                        ROBERTO A. LANGE
                        UNITED STATES DISTRICT JUDGE